**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**SAMMY MOZINGO**                                                                         **PLAINTIFF**

**V.**                                        **CAUSE NO. 3:14-CV-924-CWR-LRA**

**OIL STATES ENERGY, INC.**                                        **DEFENDANT**

**ORDER**

Before the Court is the defendant's motion for summary judgment. Docket No. 24. The matter is fully briefed and ready for adjudication.

**I.**     **Factual and Procedural History**

Sammy Mozingo was a field supervisor for Oil States Energy. His job required him to work 30 days in Pennsylvania, after which he had 10 days off and could return home to Mississippi at company expense. Mozingo was eligible for the protections of the Family and Medical Leave Act (FMLA).

In January 2012, Mozingo had a family health emergency. He successfully filled out the company's various FMLA application forms, took several weeks of FMLA leave, and returned to work in March.

On May 15, 2012, while in Pennsylvania, Mozingo learned that his father was behaving erratically. Mozingo requested and was granted time off to return to Mississippi and care for his father.

The parties dispute whether this time off was an advance of Mozingo's upcoming 10-day leave or instead a new period of FMLA leave. Oil States claims that it advanced Mozingo's usual 10 days off and sent him FMLA application forms to fill out in case he wanted to care for his

father for longer than 10 days.[1] Since it never received a completed FMLA application, Oil States contends, it was lawful to fire Mozingo for failure to return to work. In contrast, Mozingo states that he requested up to six weeks off, that Oil States knew this was a FMLA leave period, and that he never received the forms Oil States mailed and emailed to him.

The parties also dispute whether Mozingo qualified for FMLA leave. Upon Mozingo's arrival, he and his father had a confrontation which resulted in the father filing criminal charges against Mozingo.[2] Law enforcement subsequently advised Mozingo to stay away from his father pending a court hearing, which was held in mid-June 2012. Mozingo complied. As a result, says Oil States, Mozingo technically never provided care for his father and was not entitled to FMLA leave in the first place.

In any event, it is undisputed that Mozingo's stay in Mississippi exceeded 10 days. Oil States terminated his employment as of June 1, 2012.

This suit followed on December 1, 2014. In it, Mozingo claimed that Oil States violated the FMLA by firing him during a FMLA leave period. He alleged a willful violation of the statute. Mozingo sought compensatory damages and attorney's fees.

In the present motion, in addition to the arguments summarized above, Oil States contends that Mozingo has insufficient evidence to prove that it willfully violated the FMLA. If true, Mozingo's suit would run afoul of the FMLA's statute of limitations.

## II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Among the forms Oil States prepared was a medical certification Mozingo needed to get signed. *See* 29 C.F.R. § 825.305(a) ("An employer may require that an employee's leave to care for the employee's covered family member with a serious health condition . . . be supported by a certification issued by the health care provider of . . . the employee's family member.").

[2] The father also checked himself into a hospital without Mozingo's assistance.

2

Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III. Discussion

#### A. Substantive Law

Garden-variety FMLA claims must be brought within two years of the discriminatory act. 29 U.S.C. § 2617(c)(1). If, however, an employer commits a "willful" violation of the FMLA, the plaintiff is entitled to a three-year statute of limitations. *Id.* § 2617(c)(2).

"To establish a willful violation of the FMLA, a plaintiff must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 393 (5th Cir. 2005) (quotation marks and citation omitted). "The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (construing an identical distinction between willful and negligent

3

violations in the FLSA statute of limitations). Conduct that is unreasonable but not reckless also does not qualify as a willful violation. *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003) (quoting *McLaughlin*, 486 U.S. at 135 n.13).

"'Cases under the ADEA and FLSA' – statutes analogous to the FMLA – 'have found willfulness most frequently in situations in which the employer deliberately chose to avoid researching the law's terms or affirmatively evaded them.'" *Bass v. Potter*, 522 F.3d 1098, 1105 (10th Cir. 2008) (quoting *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 419 (6th Cir. 2005)).

**B.    Analysis**

This case was filed at the 2.5-year mark. That means Oil States is liable to Mozingo only if it has willfully violated the FMLA.

At summary judgment the Court must resolve all disputed material facts in Mozingo's favor. Doing so results in a fact pattern where: (1) Mozingo initially requested up to six weeks of FMLA leave; (2) Oil States sent FMLA application forms to Mozingo's work email account despite a company custom that field employees like Mozingo were not expected to regularly check their work email; (3) Oil States prepared but did not mail (certified or otherwise) FMLA application forms to Mozingo's home in Mississippi; (4) between May 17 and 24, Mozingo told his supervisor Quinten Breaux that he could return to work on June 14; (5) Breaux told Mozingo to take as much time as he needed; (6) Breaux's supervisor subsequently terminated Mozingo by "overstating" the case for termination to the human resources department; and (7) Breaux's supervisor did not give Mozingo an opportunity to immediately return to work.

Mozingo's best argument for a willful violation is that Oil States set him up for termination by ensuring that he would not get the required FMLA application forms.[3] Perhaps tellingly, though, his summary judgment response largely characterizes Oil States' communications in a way which falls short of a knowing or reckless violation:

- "After preparing the FMLA forms for a leave on May 16 - 25, [Oil States' regional human resources manager] may have realized that FMLA leave was not necessary for Mozingo to take his regular 10-days off, so she may have not sent the letter but instead just waited to see if Mozingo really needed more time." Docket No. 30, at 7.

- "Based on the commotion and confusion of such a merger [which took Oil States from 350 to 1700 employees], the jury could infer that the FMLA letter and notice were not mailed to Mozingo. Based on this evidence, a reasonable juror could conclude that that the FMLA cover letter or forms were not sent to Mozingo due to an internal snafu." *Id.*

- "Oil States recklessly did not send [the forms] to Mozingo due to a change in plans or to wait and see if Mozingo returned within 10 days or due to some bureaucratic snafu." *Id.* at 15.

- "The supervisor recklessly failed to even call Mozingo to alert him that an e-mail had been sent to his company e-mail address." *Id.*

It should go without saying that errors caused by waiting to see how an employee wants to proceed with a leave request, organizational commotion, or bureaucratic snafus amount to negligence at best. And it is a stretch to say that a failure to make a courtesy call amounts to reckless conduct. None of these characterizations constitute a knowing or reckless violation of federal law.

For present purposes, however, the Court will assume that Mozingo could prove a willful violation of the FMLA if all of Oil States' communications were designed to frustrate his ability to apply for FMLA leave.

---

[3] The complaints about Breaux and Breaux's supervisor are ultimately unavailing, since "overstating" the case for termination to human resources would have been irrelevant had Mozingo returned the FMLA application forms to that department.

Unfortunately for Mozingo, the evidence does not support this theory. On May 15, 2012, the company's regional human resources manager, Rhonda Totten, called Mozingo on his cell phone to discuss the FMLA application process. Docket No. 28-16. She testified as follows in her deposition:

> [Counsel]: Does that look like an e-mail that you got from Tim Haynes giving you Sammy Mozingo's cell number?
> [Totten]: Yes.
> [Q]: Okay. Do you remember -- and did you talk to Sammy? Did you call him?
> [A]: Oh, yes, sir.
> [Q]: Okay. Do you remember what you told him?
> [A]: I remember talking to Sammy about that his -- this FMLA would be a different request for leave than his first one, and to make sure that he understood that, that it didn't continue on because it was two different situations.
> [Q]: Okay.
> [A]: *And that he would be receiving paperwork and he would need to fill them out, just like he had done previously. And also get information, documentation that would need to come back from a physician so that he could get approved for his FML[A]* and let him know how many weeks he had available. I remember just going over the requirements of going through FMLA. . . . I do remember when I went over this that I did confirm where he would be, where specifically to send that, because he was talking about he was going to be with his dad.
> [Q]: Okay. Do you remember what address he confirmed?
> [A]: It was the -- on the paperwork that was there. And if I remember correctly, I think it was the -- I think he said -- I remember him saying something about his wife would be there. I thought it was -- it may be his home address.
> [Q]: Okay. That's right.
> [A]: And that his wife -- even though he would be with his dad, his wife would be there.

Docket No. 28-3, at 10 (emphasis added).

Mozingo agrees that he spoke with Totten that day and has not disputed the substance of the above testimony. Docket No. 28-1, at 4. Contemporaneous evidence is supportive, too. Totten emailed Breaux's supervisor later that day with the following: "I just talked to Sammy

6

and made sure he FULLY understands his responsibilities with communicating his status and return time, how his time off will be handled etc." Docket No. 28-19.[4,5]

The necessary conclusion is that Oil States' conduct did not rise to the level of a knowing or reckless violation of the FMLA. Perhaps it negligently failed to mail Mozingo the FMLA application forms. That does not constitute a willful violation, especially where: (a) Mozingo's recent experience with FMLA leave gave him actual knowledge that he had to return certain FMLA forms to the company; (b) on the day he requested leave, the human resources manager spoke with Mozingo about the forms; (c) Mozingo knew from that phone call that forms would be mailed to his address in Mississippi; and (d) assuming they never arrived, Mozingo never followed up to request a second set of forms despite his knowledge that they were necessary.

As a result, Mozingo is entitled to a two-year statute of limitations. Since his complaint was filed at the 2.5-year mark, it was untimely and cannot proceed further.

## IV.  Conclusion

The motion for summary judgment is granted. A separate Final Judgment will issue this day.

**SO ORDERED**, this the 16th day of February, 2016.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[4] Totten's email continued, "I requested that Sammy respond to this e-mail." Docket No. 28-19. Mozingo denies that she said that. Docket No. 28-1, at 4. The discrepancy cannot be resolved at summary judgment.

[5] Totten also testified that when she did not receive Mozingo's signed forms, she left him a voice message on his cell phone to remind him, but never heard back. Docket No. 28-3, at 15. Mozingo disputes receiving or missing any phone calls during that time period. Docket No. 28-1, at 4.